The second case is Smith v. Board of Directors Mr. Fryer Yes, Your Honor. Proceed. Thank you, Your Honor. Here's the court. Because the Federal Arbitration Act and Supreme Court precedent mandates that courts should rigorously enforce arbitration agreements according to their terms, a party opposing arbitration bears a heavy burden to demonstrate those mandates are contrary to a congressional command. Any doubt must be resolved in favor of arbitration. This is true even for claims alleging violation of federal statutes. Indeed, although the Seventh Circuit has not expressly so ruled, the district court in this case noted circuit courts considering the issue have generally concluded that there is no congressional command prohibiting a risk of claims from being arbitrated. The Supreme Court has also found that arbitration provisions containing class waivers are enforceable, even if a federal statute expressly permits class actions. Yet the district court here denied enforcement of the arbitration provision with class waiver in this case by application of traditional state law contract analysis. The application of state law contract principles was an error with respect to an arbitration provision that is a term of an ERISA plan. ERISA preempts any state law that relates to ERISA covered benefit plans. It is ERISA and not state contract law that should control plan interpretation. As this court has observed, an ERISA plan is a contract, but it is a special kind of contract. ERISA plans are typically not negotiated. Employers and plan sponsors have wide latitude to design ERISA plans as they see fit. In fact, employers and plan sponsors are generally free under ERISA for any reason and at any time to adopt, modify, or even terminate those plans. Though plan participants are not consulted and do not consent to such amendments, they are ordinarily bound by those amendments unless they violate a provision of ERISA. For example, where an amendment diminishes participants' accrued rights under a plan. Thus, it is the terms of the plan and the statutory guardrails of ERISA that define the extent of a plan sponsor's authority to amend an ERISA plan. Mr. Fryer, I understand your argument just fine on that front. You have to acknowledge, do you not, though, that it is the very, very exceptional circumstance where you can find consent without any notice of an arbitration provision to a party that is later sought to be bound to arbitration. I would agree, Your Honor. I think it is under very limited circumstances, but I do believe ERISA is one of those rare circumstances, Your Honor. And I think part of that is because of the latitude that plans are given, plan sponsors are given to modify the plan as may be necessary and may be best for participants. And they have the latitude to do that even without giving prior notice or negotiating, for example, with any of the individual participants. And I think a good example of that, Your Honor, that I think is similar are amendments that include in the plan document forum selection clauses. And as you know, of course, Your Honor, ERISA has a very specific sort of jurisdiction in many provisions that give latitude as to where the action would take place. But our courts have found that a forum selection clause that restricts that by a plan term would be enforceable, notwithstanding the ERISA language and notwithstanding the desire of a participant to be in a different forum. Thank you. Mr. Fryer, I'd like to take you to your argument in the gray brief, specifically enforceability of the arbitration provision. When we take a look at the pleading documents here, there's a whole series of forms of relief that Mr. Smith is seeking listed A through K. One of the challenges that we're going to have in resolving this is how does that mesh with the arbitration provision? So we look at an A2 case like this and the sought relief, the relief flowing to individuals and to the entire plan. How are we to mesh that A through K types of relief with what this arbitration provision provides? Sure, Your Honor. I believe that all of that relief is available to the individual participant in arbitration. I don't believe that this provision restricts any of the relief that can be awarded under ERISA, either by a court or by an arbitrator. It would need to be done at an individual by individual basis if other individuals chose to bring arbitration and sought similar relief. I do think that in this instance, there is a sort of a clear path towards recovery of, you know, into his individual plan account for any damages he believes were caused by an improper valuation at the outset of this ESOP creation. And so I think that all of these items of relief are available to this participant. It's not clear that he would be entitled to injunctive relief, perhaps under some holdings, because he might not have standing given that he's a former participant and therefore may not have an interest in ongoing future plan fiduciaries being in place. For example, there are some cases to that effect. But assuming that the plaintiff had standing, I think all of these can be obtained in arbitration. So, Mr. Farr, let's let's be concrete about that. Let's assume that the case goes to arbitration. Let's assume for discussion purposes that Mr. Smith prevails across the board. Would the arbitration panel have the remedial authority in your view to remove the directors of Triad Manufacturing as well as the trustee? I do, Your Honor. Okay. And so the question then is how do you and I know that that's the position I believe you took on pages 14 and 15 of your reply brief. So the question I have is how do you square that with the language of the plan document? And you know what I'm talking about there? What I'm getting at there is it's. He can only receive remedial or equitable relief that does not benefit another plan participant. So how could that relief be entered? I think the relief would be to to remove a plan fiduciary areas, as in this example, because of conduct as as it was found to be breaching in that arbitration, that fiduciary would be released or removed. But I understand that that may have sort of incidentally will have an impact on other plan participants and it's planned as a whole. But that is not necessarily relief that was designed to endure to the plan participants as a whole or the plan just from the arbitration provision. But is that is that what you just said? How do you align that with the exact language? In sub paragraph, you know, in that sub paragraph B, this says no group class or represent representative arbitrations with this that has a specific reference to A2 and 409 and then goes further and says, make no mistake. The only relief is individualized relief. Right. Well, certainly he would have economic relief to recovery to his monetary. Yeah, that's not that's not what I'm focused on. I'm focused on the removal of all directors. Sure. I think that the removal of directors is a is a relief available under Arisa. It would also be available here as to the participant in his individual arbitration. And the fact that that will incidentally have ramifications beyond just this this particular plaintiff, I don't believe changes the effectiveness of that language. Really, and see, I just don't know how you can square that because that language says so long as such remedial or equitable relief does not does not include or result in a provision of additional benefits or monetary relief to any participant other than the claimant. And I don't think that would be monetary benefits to those other claimants to the other participants equitable relief, though, for sure. Sure, if I was a participant in the plan and and Smith took it upon himself to bring the claim and showed just hypothetically speaking that there were there was an egregious fiduciary breach that resulted in and effectively the looting of plan assets that way. Well, I would be mighty thankful that he brought the lawsuit. It would definitely benefit me. And that's that's the part that I don't understand how you square with the plan language. Yeah, I can understand that example where whereby another participant could conceivably benefit from something. Well, well, I, but yeah, but I think that the difference to me, though, is that the, the relief being ordered with respect to this individual's arbitration is just that to this individual's arbitration and if it happens to have some benefit to other participants who have not brought arbitration actions. I don't think that that's not what's intended by the specific relief. And so I don't think it, it sort of violates what's what is in this provision, which, which otherwise does not allow for plan wide or other participants to benefit. Isn't there the further problem Mr prior of the non severability of the arbitration provision. I mean, it's a complete up or down. Correct. It's a complete up or down your honor. I agree with that. And I think if these two passages can't be read together, then, then they would both fall together. I think here, where we have a plan document that has been amended to contain an arbitration provision. I think that separates this case from several others in which courts have declined to enforce amendments, for example, where the arbitration provision is not included in the plan, but in separate documents such as employment agreement or a handbook. And it's also different than those cases in which a third party seeks to enforce the arbitration provision, such as a financial manager, such as in Cooper, for example. And I think that that makes this a different case because here, the arbitration provision and the plan are one in the same. And I think that is, is helpful in regard to the Supreme Court's command in epic that we read to federal statutes to in harmony, so that we give it back to to both of them. And here, I think Congress enacted the FAA to combat judicial hostility for arbitration agreements. And half a century later, Congress enacted ERISA to protect participants and private benefit plans and to encourage employers to offer benefits by promoting efficient plan administration. But Congress did not draft into ERISA any provision that would exclude the FAA's instructions to federal courts to enforce arbitration agreements according to their terms. And the, you know, the commandment from the Supreme Court is to read them together to give effect to both because they both touched on similar subjects. And reading the FAA and ERISA in concert compels enforcement of the arbitration provision here. The FAA requires arbitration agreements be enforced according to their terms. ERISA requires plan documents be enforced as written. The arbitration provision here is in the plan document. It was, it was added by valid amendment under ERISA. And by applying the exempted state contract law, the district court did not synthesize the FAA and ERISA that produced a result that contradicts both of those statutes. I think that the, the plaintiff here contends that notwithstanding the plan sponsor's authority to amend the ERISA plan document, the arbitration provision cannot be enforced because the plaintiff himself did not consent to it. The district court similarly found that the plaintiff did not personally consent and therefore could not be bound by it. We believe that while this plan sponsor was free to amend the plan document to include the arbitration provision, to the extent consent is necessary to enforce it is the plan's consent, not the plaintiff's, that should matter because the plaintiff's claims here belong to the plan. That's what the Ninth Circuit concluded in Dorman, and that conclusion is anchored in the Supreme Court's holding in LaRue. And importantly, the district court relied on the Supreme Court's holding in Massachusetts Mutual Life v. Russell. We believe that's flawed because in Russell, the outcome was limited to the specific nature of a divine benefit plan, that issue there. Whereas the defined benefit plan provides specified benefits to each participant, regardless of the aggregate value of the plan's asset, the defined contribution plan consists of the individual participants' plan accounts, and each participant is entitled only to the value of the assets in that account. For that reason, we think LaRue went on to recognize that those would be inherently individualized when brought by a participant in the context of a defined contribution plan, which is what the ESOP plan is here. Thank you, Mr. Fryer. Thank you, Your Honor. Mr. Stris. Thank you, Your Honor, and may it please the court, Peter Stris on behalf of the plaintiff. The Triad Arbitration Clause is a textbook prospective waiver of statutory rights. On its face, it limits or prohibits substantive remedies listed in Section 409 of ERISA that Congress made available to every 502A2 plaintiff. So I think the way I want to go about this is let's start by addressing what substantive remedies are authorized, and that takes us to 409. So if we look at 409, what it says is pretty simple. It says when there's a fiduciary breach, the fiduciary shall restore any losses to the plan caused by the breach, shall restore any profits made by the fiduciary, and shall be subject to removal if the court deems that appropriate. These are all substantive remedies. The only question is who is authorized to seek them, and that takes us to the next step, which is Section 502A2. And in 502A2 of the statute, Congress authorized several types of plaintiffs, the Secretary of Labor, fiduciaries, and any participant or beneficiary, to sue. The Supreme Court has repeatedly made clear what is, I think, evident on the face of the statute, which is that every A2 plaintiff sues on behalf of a plan for the relief in Section 409A to remedy injury to the plan. That's just kind of a fancy way of saying the claim is always representative. So that takes us to the third piece of the stool, which is what does this arbitration provision do? And the reason I say it's a textbook case of prospective waiver is because it starts by expressly forbidding any representative litigation, which by definition is what 502A2 does. But it goes further than that. It then applies that principle to a prohibition of any 502A2 claim that would confer the particular substantive remedies that are listed in 409. So to pick up on kind of some things you were asking, Judge Scudder, the provision, and this is at A2, says, the claimant may not seek or receive any remedy which has the effect, it says has the effect of providing, and then it's a series of things, additional benefits or monetary or other relief to any participant. There's no way to read that other than to say that that prohibits fiduciary removal. And in fact, the Supreme Court in Russell made that very point. The Supreme Court said that Congress, this is at 142 of Russell, Congress specified removal of the fiduciary as an example of the kind of plan-related relief provided by the more specific clauses it succeeds. In other words, just like loss restoration, just like disgorgement, it benefits everyone in the plan. Now I understand that my friend on the other side now doesn't want to say, wants to say that the provision does not bar fiduciary removal, because that's obviously a prospective waiver, and there's a non-severability clause, you know, phrase in the clause. But that's the provision that's written, that is a prospective waiver, and before I even get to loss restoration and disgorgement, that means the entire provision is unenforced. But put differently, Mr. Stris, what you're arguing is, it doesn't make any difference what triad thinks it means, or what triad now wants to represent that it means, the provision means what it says. And it, absolutely, and it's susceptible to only the interpretation that Your Honor offered, and that we, and the position that we're taking, which is that fiduciary removal is prohibited. It's not much different, is it, than some of these circumstances that you see pop up, where an employment discrimination suit may be subject to arbitration, and then the arbitration agreement, say on the basis of gender or race or something, and then the arbitration agreement says no punitive damages. Or no treble damages, or no equitable relief. That's why I say it's a textbook prospective waiver. Now the only way my friend Mr. Fryer can defend that, with regard to loss restoration, he can't defend it with regard to fiduciary removal. We've seen that. But the only way he attempts to defend it with regard to loss restoration and disgorgement, is to essentially mischaracterize what is happening in the statute. What defendants are doing is, they're attempting to transform a representative cause of action, where the substantive remedy is disgorging all of the gains and giving them to the plan, and restoring all of the losses to the plan. They're trying to make that into an individual cause of action, which it's not, to transform an exculpatory clause into a class action waiver. We are not talking about the class action waiver here. If you look at the provision, this is at A2, it bars both actions in a representative capacity, or on a class, collective, or group basis. These are two totally different things. Assuming there is consent, which there isn't in this case, and I'll get to that in a moment, if a plan wants to write an arbitration provision, that prohibits 502A2 claims from being brought as a class, the Supreme Court jurisprudence would allow that. You don't have a substantive right to that procedural vehicle. But the provision couldn't prospectively waive plan-wide remedies. As long as, in the arbitration, the individual participant could seek restoration of all losses as a representative to the plan, and disgorgement of all gains, then you would go to a different forum. But that's not what's happening here. What's happening here is, it bars class actions and representative behavior, and that is where we have the prospective waiver. So, that's the District Court's holding from page A5 to A6. And really, that's the end of the story. The provision, whether it was consented to or not, it's a prospective waiver, it's unenforceable, arbitration is not compelled. But I'm going to turn, because I have some time remaining, to the District Court's alternative, because we agree with that as well. And this is, the holding is on page A3 to A4, which is the determination that Mr. Smith is not even bound by the arbitration clause in the first place. So, the FAA requires mutual consent to arbitrate. We cite a number of cases on page 35 of our brief. This circuit has said this before. When one party has unilateral discretion to add or to modify an arbitration provision, it's illusory and it's invalid. Now, here's the key point for purposes of this case. There's no exception for adhesion contracts. And let me explain what I mean by that. You can only take it in an adhesion contract if you're given a chance to leave it. In other words, you have the opportunity to reject the entire contract with impunity. Right? So, if I want a cell phone from AT&T, I can't bargain. They have a contract. It says it's an arbitration provision. But they can't force me to sign the contract. I have to actually get the contract, and I have to sign it, or I have to take some action. I have to have the chance to reject it. That didn't happen here. The facts of this case are very unusual, and I want to explain what I mean by that. In 2016, Mr. Smith became an inactive participant. He's no longer accruing benefits. All he had was a non-forfeitable account balance that he couldn't withdraw until 2019. The arbitration provision was added in 2018. That's two years after he left the plan. It's three years after the underlying alleged conduct, the misconduct here. And as defendants explained, you don't have to take my word for it, in their motion to compel arbitration, the only way he could reject the entire contract, meaning exit the plan, was by giving up his non-forfeitable account balance. In other words, their continued participation argument really amounts to the plan had custody of his money, and he had to forfeit it. But under no conception of consent, ERISA, state law, any body of law that I've ever seen, would that constitute consent? Would that constitute an agreement? ERISA itself says you can't amend a plan to forfeit accrued benefits. The idea that there can be implied non-mutual consent, where the only way that you can say no is to do the very thing that an amendment can't do under the statute, that doesn't make any sense. Mr. Stris, let me offer you a context that may be counter to that, and you can tell me I'm wrong to think that way. The only context, thinking about this argument, that I could think of that may support Mr. Fryer's position is a shareholder derivative suit. State law shareholder derivative suit. Take Delaware law. Very different context than you're talking about. There is law that seems to be pretty well accepted from what we could tell, that the consent to arbitration, the agreement to arbitrate, does not have to come at the shareholder level in a derivative suit. Now why am I using a derivative suit? Because 502, it's not the same. I understand that. It's a rough analog for purposes of thinking about consent. Go ahead. Yeah, so I understand your question. I'm going to answer it directly. I just want to be clear, that's defendants, the plan consent is enough argument. And so I'm going to get to that. But what I was talking about a moment ago is to dispense with their, even if they lose that argument, somehow Mr. Smith consented here. I think that argument's a non-starter. Okay, so to your question. I understand the context. Here's why I think an 8-2 claim doesn't work that way. So an 8-2 claim is representational. That's true. But I think the Supreme Court has made very clear that in a number of contexts, obviously Article III standing is one of them, but that the claim belongs to the individual plaintiff who has a personal interest in the outcome. Now I understand you might suggest the same thing in a shareholder derivative suit, but I'm not sure. In other words, certainly in a case where you have an assignment, Mr. Fryer's argument would be a good one. In other words, if I have a claim, I agree to arbitrate it, and then I assign it to you, the arbitration carries over, the provision carries over. The question is, does that apply to this type of representational claim? That I would submit, Your Honor, is more similar to a beneficiary at common law of a trust suing when the trust corpus has been diminished because the trustee did something and won't sue on behalf of the trust. That may be right. So what you're saying is, look, there is a rough analogy there, but it's not tight enough. And the reason it's not tight enough is because a 502A2, it's not truly derivative. He's not standing completely in the shoes of the plan. He has an individualized interest in receiving compensation for the wrong that he's alleged at an individual level. That's your point. I agree with that, but all of these are analogies. In other words, I agree, even my analogy to common law trust is just an analogy, so it does require some work to essentially figure it out. But I think the practical consequences of the rule that you pick heavily militate in our favor. Let me explain why. If I'm wrong, if our position is wrong and only the plan can consent, why would you only look at the plaintiff's knowledge in ascertaining the statute of limitations? You wouldn't. Anyone who could act on behalf of the plan that had knowledge would be irrelevant. No court ever does that. They recognize that it's individual enough, as well as derivative, that it's the plaintiff's knowledge that matters for the statute of limitations. The same thing is true for settling the claim, right? There's different types of A2 claims, for sure. You could bring one against a third-party fiduciary where you're not suing the board fiduciaries. That might be one that's akin to a derivative situation where is the person appropriate? Should they have to make a demand? But if you have a case where board fiduciaries are sued, the people who could have brought an action on behalf of the plan, how can it be that they could, as defendants, say, well, we're going to settle this case with ourselves for a dollar because it's our claim. It's not their claim. There's enough of an individualized interest of any participant or beneficiary such that for the purposes of consent, and really, since I have 30 seconds, I'll end by saying this is an FAA case. And as challenging as the law is for plaintiffs trying to get out of arbitration when there are things like class waivers, the flip side is true here for my friend, Mr. Fryer. There has to be consent. The FAA has made very clear that it has to be real. It has to be mutual. And certainly the arguments that Mr. Smith did anything individually to consent don't work. And on the plan level, I just think it's not enough, and the district court was right. And so we urge affirmance. Thank you for your time. Thanks to both counsel, and the case will be taken under advisement, and the court will be in recess for 10 minutes.